UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TROMBLEY ENTERPRISES, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>SAUER, INC., et al.,<br><br>    Defendants. | Case No. 5:17-cv-04568-EJD<br><br>**ORDER GRANTING MOTION TO DISMISS SECOND COUNT; DENYING MOTION TO DISMISS FOURTH COUNT**<br><br>Re: Dkt. No. 69 |

I. INTRODUCTION

This lawsuit arises out of the construction of the Operational Readiness Training Complex at Fort Hunter Liggett located in Monterey County, California ("Project"). The United States Army Corps of Engineers awarded a contract to Sauer, Inc. ("Sauer") to design and build the Project. Sauer entered into a subcontract with Plaintiff Trombley Enterprises, LLC, dba Trombley Painting Company ("Trombley"), to perform painting and related work on the Project.

Pending before the Court is Sauer's motion to dismiss the second and fourth counts of the Third Amended Complaint ("Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. At issue is the legal sufficiency of Trombley's claims for negligent misrepresentation and breach of the covenant of good faith and fair dealing. The Court finds it appropriate to take the motion under submission for decision without oral argument pursuant to Civil Local Rule 7-

1(b). For the reasons set forth below, Sauer's motion to dismiss is granted in part and denied in part.

## II. BACKGROUND[1]

In February of 2014, the United States Army Corps of Engineers ("USACE") awarded a contract to Sauer to design and build the Project. Complaint ¶ 7. On June 1, 2015, Sauer and Trombley entered into a painting subcontract for the Project for $516,975.00. *Id*. ¶ 9, Exhibit 3. Trombley calculated its bid based upon Sauer's representation that the painting portion of the Project would commence immediately and would end no later than March of 2016 or a period of 11 months. *Id*. ¶ 11. Trombley would not have submitted the bid that was accepted if Trombley had known that the painting portion would not commence and end as Sauer had represented. *Id*.

Trombley alleges that when Sauer entered into the subcontract, Sauer knew or should have known that the Project was already delayed and that the Project would not be ready for painting until 2016. *Id*. ¶ 12. Trombley alleges that Sauer's knowledge of the delay may be inferred from the fact that the Project schedule provided to Trombley after the parties had already entered into the subcontract indicated that the painting should have started a couple months earlier in April of 2015. *Id*. ¶¶ 12, 14.

The parties exchanged emails regarding the schedule and Sauer provided its subcontractors with an updated project schedule on June 25, 2015. The updated schedule indicated that Trombley was to have commenced work on June 20, 2015 and was to complete work by May 27, 2016. *Id*. ¶¶ 15-17.

Over the next several months, Trombley sent several emails to Sauer asking Sauer to provide an accurate start date. *Id*. ¶ 19. On July 17, 2015, Sauer sent Trombley and the other subcontractors an updated project schedule that moved the "late start" date for painting production to early August of 2015 but maintained the May 27, 2016 Project completion date. *Id*. Trombley

---

[1] The Background is a summary of the allegations in the Complaint.

Case No.: 5:17-cv-04568-EJD
ORDER GRANTING MOTION TO DISMISS SECOND COUNT; DENYING MOTION TO DISMISS FOURTH COUNT

2

emailed Sauer several times to express concerns about the schedule, but Sauer never responded. *Id*. ¶¶ 20-22.

As of November 10, 2015, Sauer knew, but failed to inform Trombley, that the Project completion date had been moved to October of 2016, and that the buildings would not be ready for painting until June of 2016. *Id*. ¶¶ 22-25. On December 30, 2015, Trombley again asked Sauer for the anticipated start date. *Id*. ¶ 26. Sauer told Trombley that the anticipated start date would be in February of 2016, but that Sauer was not certain. *Id*. ¶ 26.

On January 12, 2016, Sauer directed Trombley to begin painting the mechanical rooms and Trombley immediately mobilized a 10-man crew to the Project site. *Id. ¶* 27. When Trombley arrived at the Project site the next day, Trombley learned that only three of the four mechanical rooms were ready for painting. *Id*. ¶¶ 27-28.

On February 12, 2016, Sauer directed Trombley to begin "production painting work." *Id*. ¶ 29. When Trombley arrived at the Project site a few days later, Trombley found that the buildings were only partially complete. *Id*. ¶ 30. Trombley began painting, but the work was inefficient and costly because other trades were still working on the Project. *Id*. ¶ 31. Trombley alerted the Project manager of the situation and was told to "stand down its crew" until the other trades had completed their work. *Id*.

On February 23, 2016, Trombley sought direction from Sauer on how to proceed because the buildings were not ready for painting. *Id*. ¶ 32. In response, Sauer told Trombley to return to the jobsite immediately and to begin painting interior walls. *Id*. ¶ 33. From February 23, 2016 through March 3, 2016, Trombley had a fully manned and equipped crew on-site that was "unused." *Id*. ¶ 34. As of March 3, 2016, the only portions of the buildings that were ready for painting were the "vaults"; the drywall on the interior walls still had not been completed. *Id*. ¶ 35. As of March 16, 2016, only portions of two buildings were ready for production painting. *Id*. ¶ 37. At this point, Trombley learned from speaking to the Project fire captain that the USACE had extended the completion date for the Project. *Id*. ¶ 38. Sauer confirmed that that it had been given

Case No.: 5:17-cv-04568-EJD
ORDER GRANTING MOTION TO DISMISS SECOND COUNT; DENYING MOTION TO DISMISS FOURTH COUNT

3

an extension for completion of the Project but refused to tell Trombley the new completion date. *Id*. Despite the delays and despite the extension, Sauer kept pressuring Trombley to finish production painting by the end of March of 2016 or else face liability for liquidated damages. *Id*. ¶ 38.

Over the next several months, Sauer would notify Trombley that portions of the buildings were ready for production painting and demand that Trombley have a full crew at the worksite. *Id*. ¶¶ 39-40. Upon arrival, however, Trombley's crew would stand idle because the buildings were not, in fact, ready for painting. *Id*. One of the causes of delay was that Sauer's own building inspector would either not respond or delay responding when Trombley submitted a Request of Inspection ("RFI"). Pursuant to the terms of the parties' contract, Sauer's inspector was required to inspect and clear (or "release") an area before Trombley could begin painting. *Id*. ¶¶ 36, 42-43, 46.

The priming and painting progressed in a piece-meal manner as various rooms, levels and buildings were ready. *Id*. ¶¶ 37, 39-49. In mid-June of 2016, Sauer told Trombley that it would essentially have to complete the painting on a compressed schedule, working while other trades were on the job site, and would not get paid "extra" for working under the compressed schedule. *Id*. ¶ 50. Eventually on June 20, 2016, Sauer notified Trombley for the first time that the updated Project completion date was October 13, 2016 and directed Trombley to provide the necessary manpower to meet that deadline. *Id*. ¶ 55. In response, Trombley gave Sauer an outline of the various issues that were causing delays to the painting schedule, which primarily consisted of unfinished drywall and Sauer's failure to timely respond to Trombley's many RFIs. *Id*. ¶ 58. Nevertheless, Sauer directed Trombley to complete production painting by October 13, 2016. *Id*. ¶ 59. After Trombley protested, Sauer agreed to pay for the additional cost of labor to meet the deadline. *Id*. ¶ 61. Trombley alleges that Sauer made this representation with the intent to induce Trombley to commit additional resources; that Sauer knew it would not be paying for Trombley's change orders; that Sauer knew Trombley would be obligated to incur significant costs; that

Case No.: 5:17-cv-04568-EJD
ORDER GRANTING MOTION TO DISMISS SECOND COUNT; DENYING MOTION TO DISMISS FOURTH COUNT

4

Trombley reasonably relied on Sauer's representation; and that the principal and owner of Trombley took out loans against his personal assets to meet payroll and tax obligations necessitated by the additional labor requirements. *Id*. ¶ 62.

Delays at the construction site continued to delay Trombley's work. *Id*. ¶¶ 65-79. On July 13, 2016, Sauer agreed to pay for the costs associated with the delays, overlapping trades working on the Project and changes in schedule. *Id*. ¶ 80. Sauer allegedly "knew or should have known that it would never pay for these additional costs." *Id*.

Trombley continued to encounter delays due to overlapping trades working at the jobsite and the unfinished drywalls. *Id*. ¶¶ 82-90, 95. Trombley submitted change orders for the additional costs, but Sauer did not approve or pay for the change orders. *Id*. ¶¶ 83, 84, 89, 90, 95. Even though Sauer had more than $200,000 in outstanding unpaid change orders, Sauer demanded that Trombley increase its manpower and meet Sauer's deadlines for finishing certain buildings. *Id*. ¶ 91. Trombley increased its manpower (*id*. ¶¶ 92, 94), but objected to the deadlines and proposed an alternative schedule. *Id*. ¶ 92-93. When Trombley refused to have his crews work on the weekend, Sauer approved payment for overtime. *Id*. ¶ 94.

Trombley ultimately completed its work by the October 13, 2016 deadline and later completed the "punch list items" at Trombley's own expense. *Id*. ¶¶ 96, 101. Sauer has not paid Trombley for any of the change orders. *Id*. ¶ 103. Trombley contends that Sauer owes at least $1,045,234.14 for labor, services, materials, equipment, and supplies furnished by Trombley for the Project. *Id*. ¶ 111.

Trombley asserts claims for recovery on a Miller Act Payment Bond (count 1), negligent misrepresentation (count 2), breach of contract (count 3), breach of the covenant of good faith and fair dealing (count 4), "account stated" (count 5), "open book account" (count 6),"Work, Labor and Materials" (count 7) and quantum meruit (count 8). Dkt. Nos. 38, 45.

### III. STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed if it fails to

state a claim upon which relief can be granted. In deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." *Hal Roach Studios, Inc. v. Richard Feiner & Co*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). In considering a motion pursuant to Rule 12(b)(6), the court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (internal citations omitted); *see also* Fed. R. Civ. P. 8(a).

IV. DISCUSSION

A. Negligent Misrepresentation

Sauer contends that the negligent misrepresentation claim should be dismissed because the claim is based upon representations about future events—as opposed to representations of past or present material facts—which are not actionable. In response, Trombley contends that its claim is based upon misrepresentations of present fact.

The elements of negligent misrepresentation are "(1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986). Claims for negligent misrepresentation must meet the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure. *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003). To satisfy Rule 9(b), claims sounding in fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). In other words, "[a]verments of fraud must be accompanied by 'the

who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

Trombley alleges two types of negligent misrepresentations. First, Trombley alleges that Sauer made misrepresentations regarding the schedules for the Project. In response, Sauer characterizes the Project schedules as predictions and expectations for the future which are not actionable. Second, Trombley alleges that Sauer negligently misrepresented that it would pay Trombley in the future.

Sauer is correct that to be actionable, claims for negligent misrepresentation must ordinarily be as to representations of past or existing material facts. *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 158, 2 Cal. Rptr. 2d 861 (1991). Here, the alleged misrepresentations relate to future events: Sauer will complete construction of the Project in accordance with the timeline set forth in the Schedules; Sauer will give Trombley eleven months to complete the painting; and Sauer will pay Trombley for its work. The timeline and Schedules are forecasts or predictions about how the construction of the Project will progress. The promise to pay is also a promise to perform an act in the future. *See Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 158–159, 2 Cal. Rptr. 2d 861 (1991) (insurer's representation that it would pay plaintiff for repairs upon completion of the repairs was a promise of future performance).

Although these representations relate to future events, Trombley appears to argue that the timeline and Schedules conveyed an implied representation about the state of the Project existing at the time Sauer provided the timeline and Schedules. Trombley appears to argue that Sauer made an implied representation that the state of the Project had progressed to a point that Sauer's timeline and Schedules were feasible, when in fact, Sauer knew that the Project had already been delayed such that the timeline and Schedules could not possibly be met. *See* Trombley's Opposition (Dkt. No. 73), p. 4. The law of negligent misrepresentation, however, cannot "be

Case No.: 5:17-cv-04568-EJD
ORDER GRANTING MOTION TO DISMISS SECOND COUNT; DENYING MOTION TO DISMISS FOURTH COUNT

7

stretched so thin" as to encompass implied representations. *Byrum v. Brand*, 219 Cal. App. 3d 926, 942 (1990); *see also Wilson v. Century 21 Great Western Realty*, 15 Cal. App. 4th 298, 306 (1993) (implied assertion or representation "is not enough" to support claim for negligent misrepresentation); *Evan F. v. Hughson United Methodist Church*, 8 Cal. App. 4th 828, 840 n.2 (1992). Therefore, Trombley's claim is subject to dismissal.

Nevertheless, the court will grant Trombley leave to amend because certain broken promises of future conduct may be actionable as fraud. More specifically, a promise, made without any intention of performing it is actionable under California Civil Code § 1710. *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th at 158–159; *see also Motohouse Intern., LLC v. PPG Industries, Inc.*, No. 09-1265 MJL, 2010 WL 476652, at *2 (S.D. Cal. Feb. 4, 2010) ("an action based on a false promise is simply a type of *intentional* misrepresentation, i.e., actual fraud); *Lothlen v. Wells Fargo Bank., N.A.*, No. 13-922 SI, at *5 (N.D. Cal. March 27, 2014) (promise to perform in the future could be actionable as a type of intentional misrepresentation if plaintiff is able to allege "that the promisor did not intend to perform at the time he or she made the promise and that it was intended to deceive or induce the promisee to do or not do a particular thing").

Accordingly, Sauer's motion to dismiss the negligent misrepresentation claim is granted with leave to assert a claim for fraud, provided there is a factual basis for doing so.[2]

B. Breach of the Implied Covenant of Good Faith and Fair Dealing against Sauer

Sauer contends that the claim for breach of the implied covenant of good faith and fair dealing should be dismissed because Trombley has (1) failed to allege a breach that is independent from the alleged breaches of contract and (2) failed to allege that Sauer's conduct interfered with

---

[2] Because Trombley has failed to state a claim for negligent misrepresentation, the court finds it unnecessary to consider at this time Sauer's argument that Trombley has failed to allege the elements of reliance and damages.

Case No.: 5:17-cv-04568-EJD
ORDER GRANTING MOTION TO DISMISS SECOND COUNT; DENYING MOTION TO DISMISS FOURTH COUNT

8

Trombley's performance of the subcontract. In response, Trombley argues that its claim for breach of the implied covenant is based upon Sauer's many alleged misrepresentations and that these misrepresentations interfered with Trombley's performance of the subcontract.

"Every contract imposes on each party a duty of good faith and fair dealing in each performance and in its enforcement." *Careau & Co. v. Security Pacific Business Credit, In*c., 222 Cal. App. 3d 1371, 1393 (1990) (citing Rest. 2d, Contracts, §205 and collecting cases). "The implied covenant protects the reasonable expectations of the contracting parties based on their mutual promises." *Digerati Holdings, LLC v. Young Money Entertainment, LLC*, 194 Cal. App. 4th 873, 885 (2011). The implied covenant "imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose." *Id*. (quoting *Schoolcraft v. Ross*, 81 Cal. App. 3d 75, 80 (1978)). "Both the duty not to hinder and the duty to cooperate are aspects of the implied duty of good faith and fair dealing." *Metcalf Const. Co. v. United States*, 742 F.3d 984 (Fed. Cir. 2014) (quoting *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 828, 820 n. 1 (Fed. Cir. 2010).

A breach of the implied covenant involves "something beyond breach of the contractual duty itself." *Careau*, 222 Cal. App. 3d at 1394; *see also California Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 54 (1985) ("the authorities hold that breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself"). "Thus, allegations which assert such a claim must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Careau,* 222 Cal. App. 3d at 1395. "Just what conduct will meet these criteria must be determined on a case by case basis and will depend on the contractual purposes and reasonably justified expectations of the parties." *Id*.

Case No.: 5:17-cv-04568-EJD
ORDER GRANTING MOTION TO DISMISS SECOND COUNT; DENYING MOTION TO DISMISS FOURTH COUNT

9

Here, Trombley alleges that Sauer breached the covenant of good faith and fair dealing by engaging in actions which include, but are not limited to:

> Intentionally or negligently misrepresenting the commencement date and completion date for the painting portion of the Project, failing to respond to [Trombley's] inquiries regarding scheduling, providing [Trombley] with an unworkable schedule in order to complete the Project, failing to coordinate the work of the other trades on the Project, failing to competently manage the Project, failing to properly administer the schedule, failing to pay progress payments when due, intentionally or negligently representing that it would pay change orders submitted by [Trombley] for work created by [Sauer's] mismanagement of the Project and the compressed timeline, failing to approve change orders, providing a severely compressed timeline for [Trombley] to complete the Project, misrepresenting the schedules and timelines of the Project, causing delays in access to the work coupled with later accelerations of the work, stacking trades on the Project which prevented [Trombley] from completing its work (or requiring it to remobilize to complete the work), causing numerous and continuous changes to the sequence and order of the work which caused damage to [Trombley's] finished work, wrongfully assessing Liquidated Damages against [Trombley], and failing to pay [Trombley] in full for the costs it incurred on the Project.

Complaint ¶ 152.

These allegations continue to overlap substantially with the allegations in support of Trombley's claim for breach of contract. Nevertheless, the newly added allegations of misrepresentation are sufficient to distinguish the breach of implied covenant claim from the breach of contract claim at the pleading stage. The breach of contract claim is based upon Sauer's alleged failure to approve change orders, whereas the breach of the implied covenant claim is based upon Sauer's alleged verbal representation that it would approve the change orders with no actual intention of doing so. Further, these allegations are more than sufficient to describe how Sauer interfered with Trombley's ability to perform the contract in a reasonable, orderly and efficient manner within the 11-month period Trombley anticipated it would have to complete painting and for the contractually agreed upon sum of $516,975.00. Sauer's motion to dismiss the breach of implied covenant claim is denied.

## V. CONCLUSION

For the reasons set forth above, Sauer's motion to dismiss is GRANTED as to the second count for negligent misrepresentation and DENIED as to the fourth count for breach of the covenant of good faith and fair dealing. Trombley shall file and serve an amended complaint consistent with this order no later than February 22, 2019.

**IT IS SO ORDERED.**

Dated: February 5, 2019

EDWARD J. DAVILA
United States District Judge